In the Interest of T.M.P., J.L.Z., and D.L.Z., Minor Children,

P.Z., Father,

M.Z., Mother, Appellants.

No. 94–1137.

Court of Appeals of Iowa.

Jan. 23, 1995.

Randy S. Hisey, South Sioux City, NE, for appellant father.

Lester J. Gurdin, Sioux City, for appellant mother.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Marleen J. Loftus, Asst. County Atty., for appellee.

John C. Polifka, Juvenile Law Center, Sioux City, Guardian Ad Litem, for minor children.

Considered by HAYDEN, P.J., and HABHAB and HUITINK, JJ.

HAYDEN, Presiding Judge.

M.Z., the mother, and P.Z., the father, are the parents of T.M.P., Tiffany, born May 18, 1990; J.L.Z., Jody, born April 3, 1991; and D.L.Z., Danielle, born July 31, 1993. Tiffany's natural father's whereabouts are unknown.

Tiffany and Jody were removed from the parents' home and placed in foster care in November 1991. Jody had been in the hospital for failure to thrive, her weight being below the fifth percentile, and on her return home the parents were uncooperative and hostile with services and medical follow-up. Underfed dogs were kept in the basement of the home, and the basement was covered in the dogs' feces and urine. Six cats lived in the home, and feces were on the floor where the children crawled. Appliances in the home had exposed wires within the children's reach, and the house was cockroach-infested. Spoiled food and maggots were also found in

the home, and the children were extremely filthy.

On November 26, 1991, Tiffany and Jody were adjudicated children in need of assistance (CINA) based on the parents' stipulation to the allegations. The children were continued in foster care.

A review hearing regarding Tiffany and Jody was held in October 1993. By this time Danielle had been born and was in the parents' custody. The district court stated the parents had so far failed to maintain a clean and safe residence and continued to move from home to home including living with various relatives. The parents had numerous encounters with the police, particularly the father who was in trouble for behavior such as fifth-degree theft and traffic violations. The parents were not in compliance with services as required by the case plan. However, the mother was less resistant than the father.

In November 1993 Danielle was removed from the parents' home and placed in foster care. This action was based on police reports that the father was acting in a threatening manner to others, damaging property, and the family was being evicted from their home. A CINA petition regarding Danielle was filed. In December 1993 the parties reached a stipulation approved by the court. It provided Danielle would return home under certain conditions. One of the conditions mandated was for M.Z. to prohibit P.Z. from living in the house. In the same month the mother was arrested on a forgery charge, and Danielle was again removed and placed in foster care.

In January 1994 the State filed a petition seeking termination of the parents' rights to all three children. The petition stated Danielle met the definition of a child in need of assistance but had not been adjudicated as such.

Following a hearing, the district court terminated the mother's rights to her children pursuant to Iowa Code sections 232.116(1)(c), (e), (f), (g), and (h) (1993); and the father's rights to his children pursuant to sections 232.116(1)(c), (g), and (h). The court concluded the children would remain CINA if returned to the parental home. In particular, the court found there was homelessness, a volatile relationship between the parents, and they had numerous law enforcement encounters. The court also noted they lacked insight into their problems, lacked parenting and budgeting skills, and were dishonest with the court and service providers. The court further determined they were uncooperative and resistant towards services and blamed others for their situation.

Both parents appeal. First, they contend there was a lack of clear and convincing evidence the children could not be returned to their custody. Second, they argue termination of their parental rights was not in the children's best interests.

## I. Scope of Review.

■ Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

## II. Clear and Convincing Evidence.

■ The parents allege the State did not meet its burden of proof by clear and convincing evidence termination was appropriate under the Iowa Code. We disagree.

In this case the mother's parental rights to all three children were terminated pursuant to Iowa Code sections 232.116(1)(c), (e), (f), (g), and (h) (1993). The father's rights to his two youngest children were terminated pursuant to Iowa Code section 232.116(1)(c), (g), and (h) (1993). Those sections state termination of parental rights is appropriate if:

c. The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the

same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

\* \* \* \* \* \*

e. The court finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

f. The court finds that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

g. The court finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

h. The court finds that both of the following have occurred:

(1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.

(2) There is clear and convincing evidence that the circumstances surrounding the abuse or neglect of the child, despite the receipt of services, constitutes imminent danger to the child.

The juvenile court properly terminated the parents' rights pursuant to these sections. The evidence clearly and convincingly proved the children could not be safely returned to either parent as of the termination hearing. The parents had received over *two* years of parenting and counseling services and still were living chaotic lifestyles that would lead to their children being in need of assistance if placed in their custody.

Extensive parenting instruction was provided to address parenting and hygiene deficiencies. Individual and marital counseling was offered and not utilized by the parents throughout most of the case. The record reveals no request by the father for inpatient mental health treatment. He admitted at trial that he could have signed himself into a state institution had he so desired. The record shows whenever the father was confronted about getting individual counseling he claimed to be seeing someone from his church. He failed to provide documentation for this assertion.

■ There have been extensive and ongoing police encounters by both parents. The parents were homeless and continued a relationship as of the termination hearing. The

mother had an outstanding forgery conviction. All this shows the children cannot be returned to either parent's custody. The mother requested six more months to stabilize her life, yet she continued seeing P.Z. on an almost daily basis and had been convicted on a forgery charge in April 1994. By his own testimony, P.Z. was having to live with friends and had changed girlfriends in the last months. He was attempting to stabilize his epilepsy medication which made him argumentative and have mood swings. He missed the last three scheduled visits. Further visits were suspended. Return of any of these children would subject them again to the chaotic and unstable lifestyle of the parents which led to the removal of the two oldest children in the first place. This chaotic environment continues to include repeated incidents of domestic violence as recently as November 1993. The juvenile court is affirmed on this issue.

### III. *Best Interests.*

█ Initially, case law states in the event grounds for termination are proven our legislature has made a categorical determination the needs of a child are promoted by termination of parental rights. *See generally In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990). This family experienced a chaotic lifestyle. They had many family household moves and at times were homeless. Verbal and physical confrontations between the parents were not uncommon. The father's emotional condition was unstable. The mother was recently convicted of forgery. They had frequent encounters with the police. They have had over two years of help, aid, assistance, and services from public agencies. All of this supports a finding termination of parental rights is necessary.

The father claims to have a close relationship with the children. However, the evidence demonstrates although the parents have shown an ability to play with the children during visits, it was the mother who took the primary caretaking role. As of the termination hearing, the father had missed his last three visits. Furthermore, the children have been visiting their maternal grandparents regularly since March 1993.

These grandparents have adopted the children's half-sibling, M.Z.'s natural son, and have expressed an interest in having custody of these children as well. The mother has opposed this contact and has not had a positive relationship with the children's grandmother since her teenage years.

█ These children should not be forced to endlessly await the maturity of their mother. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). These children deserve and need a stable home and nurturing environment which their parents have been unable to provide in the past and show no ability to provide in the future. The juvenile court appropriately terminated the parents' rights based on the record and witnesses' testimony and made them available for an adoptive placement.

We determine any other issues the parties may have raised are either covered by this opinion or are without merit. Judgment of the juvenile court affirmed. Costs on appeal are to be taxed to the parents.

**AFFIRMED.**